**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 1:24-cv-23819-RKA

OMAR ROMAY, LIQUIDATING TRUSTEE,

Appellant,

v.

MEDIASET ESPAÑA COMUNICACIÓN S.A.,

Appellee.
_____________________________________/

# LIQUIDATING TRUSTEE'S CONSOLIDATED REPLY BRIEF ON DIRECT APPEAL AND ANSWER BRIEF ON CROSS-APPEAL

Paul Steven Singerman
Florida Bar No. 378860
Paul A. Avron
Florida Bar No. 50814
BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

Monique D. Hayes
Florida Bar No. 0841573
DGIM LAW PLLC
2875 NE 191st Street, Ste. 705
Aventura, FL 33180
Telephone: (305) 763-8708

Isaac M. Marcushamer
Florida Bar No. 060373
Isaac M. Marcushamer, P.A.
c/o DGIM LAW PLLC
2875 NE 191st Street, Ste. 705
Aventura, FL 33180
Phone: (305) 763-8708

*Co-Counsel for Appellant/Cross-Appellee, Omar Romay, Liquidating Trustee*

# TABLE OF CONTENTS

TABLE OF CONTENTS....................i

TABLE OF AUTHORITIES .................... ii

STATEMENT REGARDING ORAL ARGUMENT ....................1

PRELIMINARY STATEMENT ....................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW [CROSS-APPEAL].....6

STANDARD OF APPELLATE REVIEW....................6

STATEMENT OF THE CASE....................7

I. Nature of the [Cross-Appeal] Case ....................7

II. Course of Proceedings and Disposition Below....................7

III. Statement of Facts ....................9

SUMMARY OF THE ARGUMENT ....................14

ARGUMENT ....................15

A. The Bankruptcy Court committed reversible error in failing to conclude, as a matter of law, that the Liquidating Trustee established that America CVSG made the Transfer with the intent to hinder or delay its creditors....................15

B. The Bankruptcy Court committed reversible error in failing to start its downward adjustment of the litigation contingency from the face value of the Romay Parties' claim. ....................24

C. The Bankruptcy Court correctly held that it possessed *in personam* jurisdiction over Mediaset....................28

CONCLUSION....................36

CERTIFICATE OF COMPLIANCE ....................................................................37

CERTIFICATE OF SERVICE ........................................................................37

# TABLE OF AUTHORITIES

**Cases** **Page**

*Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325 (11th Cir. 2007) ..........................24, 26

*AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust)*, Adv. Pro. No. 052006, 2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) ..........................31

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985)..........................13, 29, 30

*Calder v. Jones*, 465 U.S. 783 (1984)..........................32, 33

*Caminetti v. United States*, 242 U.S. 470 (1917)..........................16

*City Nat'l Bank of Fort Smith, Ark. v. Bateman (In re Bateman)*, 646 F.2d 1220 (8th Cir. 1981)..........................17

*Coder v. Arts*, 213 U.S. 223 (1909) ..........................19

*Engine Mfrs. Assn. v. South Coast Air Quality Mgmt. Dist.*, 541 U.S. 246 (2004)..........................17

*Freeland v. Enodis Corp.*, 540 F.3d 721 (7th Cir. 2008) ..........................26

*Fruitticher v. Beach Comm. Bank (In re Fruitticher)*, No. 3:18-cv-1326-JA-EMT, 2019 WL 1082355 (N.D. Fla. Mar. 7, 2019)..........................18, 19, 22

*Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570 (11th Cir. 1989) ..........................8

*Howard Indus., Inc. v. BADW Grp., LLC*, No. 20-5596, 2021 WL 2328477 (6th Cir. Mar. 2, 2021) ..........................22

*Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581 (2016)..........................19

*In re Alico Mining, Inc.*, 278 B.R. 586 (Bankr. M.D. Fla. 2002)..........................27

*In re Sentinel Mgmt. Grp., Inc.*, 728 F.3d 660 (7th Cir. 2013)....6

*In re The Heritage Org., L.L.C.*, 375 B.R. 230 (Bankr. N.D. Tex. 2007)....24

*In re Wise*, 590 B.R. 401 (Bankr. E.D. Mich. 2018)....18, 19

*In re Wreyford*, 505 B.R. 47 (Bankr. D.N.M. 2014)....18

*International Shoe Co. v. State of Wash.*, 326 U.S. 310 (1945)....30

*Levinson v. LHI Holding, Inc.*, 176 B.R. 255 (M.D. Fla. 1994)....16, 17

*Mayo v. Pioneer Bank & Trust Co.*, 270 F.2d 823 (5th Cir. 1959)....18

*Miller v. Wylie (In re Wylie)*, 119 F.4th 1043 (6th Cir. 2024)....21

*Mittenthal v. Florida Panthers Hockey Club, Ltd.*, 472 F. Supp. 3d 1211 (S.D. Fla. 2020)....16, 17

*Nasrallah v. Barr*, 140 S.Ct. 1683 (2020)....8

*Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.)*, 904 F.2d 588 (11th Cir. 1990)....24

*Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),* No. 11 MC 0012, 2011 WL 3897970 (S.D.N.Y. Aug 31, 2011)....21, 27

*Reynolds v. Behrman Cap. IV, L.P.*, 2019 U.S. Dist. LEXIS 21630 (N.D. Ala. Feb. 11, 2019)....32

*Rosillo v. Holten*, 817 F.3d 595 (8th Cir. 2016)....8

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014)....8

*S.E.C. v. Elliott,* 953 F.2d 1560 (11th Cir. 1992)....37

*Shaffer v. Heitner*, 433 U.S. 186 (1977)....32

*Shapiro v. Wilgus*, 287 U.S. 348 (1932)....19

*Smith v. GTE Corp.*, 236 F.3d 1292 (11th Cir. 2001)............................................25

*Stratton v. Sioux Falls Paint & Glass (In re Stratton)*,
23 B.R. 284 (Bankr. S.D. 1982).........................................................................6, 20

*Trust v. LukOil Pan Americas LLC*, 65 F.4th 556 (11th Cir. 2023)..........................6

*U.S. v. Ron Pair Enterp., Inc.*, 489 U.S. 235 (1989) .......................................16, 19

*United States v. Calixte*, No. 23-14212, 2024 WL 4799712
(11th Cir. Nov. 15, 2024) ..........................................................................................35

*United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004).......................................35

*United States v. South Capital Constr., Inc.,* 758 F. App'x 676
(11th Cir. 2018) .........................................................................................................37

*Washington v. Confederate Bands and Tribes of Yakima Indian Nation*,
439 U.S. 463 (1979) ....................................................................................................6

*Watkins v. Officer Davlin Session*, No. 19-60810-CIVALTMAN/Valle,
2021 WL 663762 (S.D. Fla. Feb. 19, 2021)...........................................................1

*Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282 (11th Cir. 2007).....8

**<u>Statutes</u>**

11 U.S.C. § 101(32)(A).............................................................................................27

11 U.S.C. § 548(a)(1)(A) ......................................................................................passim

11 U.S.C. § 548(a)(1)(B)(i)........................................................................................23

11 U.S.C. § 548(a)(1)(B)(ii)(II)-(III) .........................................................................23

11 U.S.C. § 548(c) .....................................................................................................23

**<u>Rules</u>**

Fed. R. Bankr. P. 8015(a)(5) ........................................................................ 37

Fed. R. Bankr. P. 8016(d)(2)(A)(i) .................................................................. 37

Fed. R. Civ. P. 52 ................................................................................................ 8

Fed. R. Civ. P. 56 .............................................................................................. 28

**<u>Other Authorities</u>**

3 *Bankruptcy Litigation* § 17:73 (Nov. 2024 Update) ........................................... 26

## STATEMENT REGARDING ORAL ARGUMENT

Appellant/Cross-Appellee Omar Romay, Liquidating Trustee for the America-CV Station Group, Inc. Liquidating Trust, requests oral argument in connection with the cross-appeal by Appellee/Cross-Appellant Mediaset España Comunicación, S.A., n/k/a Grupo Audiovisual Mediaset España Comunicación, S.A.U. Mr. Romay believes that oral argument will materially assist the Court in its decisional process.

## PRELIMINARY STATEMENT

Mediaset[1] stipulates that the actual fraudulent conveyance statute, 11 U.S.C. § 548(a)(1)(A), is stated in the disjunctive, but nevertheless insists that that any hindrance or delay must be fraudulent or with improper or wrongful intent or conduct. This overarching argument, and the cases upon which it relies, fly in the face of the plain language in the statute and its disjunctive composition. This Court has previously criticized a judicial opinion for not adhering to the disjunctive nature of a statute. *See Watkins v. Officer Davlin Session,* No. 19-60810-CIVALTMAN/Valle, 2021 WL 663762, at * 6 (S.D. Fla. Feb. 19, 2021) (criticizing a Florida Supreme Court opinion for, among other things, construing a statute in a way that "ignore[d]" its "disjunctive composition"). This Court is not at liberty to

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in *Liquidating Trustee's Initial Appellant's Brief* [ECF No. 15] (the "Initial Brief").

add or read words into the statute to conform to Mediaset's desired construction to impose legal requirements not set forth in the statute. To the extent improper or wrongful intent or conduct is required beyond the intent contemplated by Section 541(a)(1)(A)—***it is not***—the Bankruptcy Court's findings of fact clearly establish that improper or wrongful intent or conduct, specifically including the WhatsApp conversation where Fernando Elias Calles (a director and counsel for Pegaso) stated that the Transfer might well be considered an avoidable fraudulent transfer, and that the Transfer was made with the actual intent to make it "harder," "more difficult," and "more challenging" for the Romay Parties to collect on their claim. To the extent the foregoing is not direct evidence of the required intent, reference to the non-exclusive list of badges of fraud, as Mediaset urges, is appropriate, and also establish intent to hinder and delay. Indeed, the Bankruptcy Court found three such badges: that America CVSG (i) made the Transfer during pending, not just threatened, litigation; (ii) received less than reasonably equivalent value in return for the Transfer, and in fact received no value at all; and (iii) made the Transfer with the intent to make it "harder," "more difficult," and "more challenging" for the Romay Parties to collect on their claim.

Mediaset also argues that a requirement for establishing an actual fraudulent conveyance claim is evidence of harm to creditors. But that argument fails because the statute requires no such showing. Caselaw noting that the underpinning of

fraudulent conveyance law is to preclude depletion of the bankruptcy estate does not change the statutory requirement. Finally, multiple references to the intent, knowledge or involvement of parties, specifically including Mediaset, in respect of the Transfer are wholly irrelevant because the statute only focuses on the intent of the transferor—here, America CVSG. The Bankruptcy Court committed reversible error in failing to conclude as a matter of law that the evidence in the record of the proceedings below established intent to hinder or delay given its clear findings of fact.

The long-standing prior panel precedent rule refutes Mediaset's contention that *Nordberg* was overruled by *Advanced Telecommunications*. While Mediaset correctly states that the caselaw relied upon by the Liquidating Trustee standing for the proposition that a downward adjustment starts from the claim's face value is non-binding, that law squarely supports and is entirely consistent with his reading of the relevant language in the Eleventh Circuit's opinion in *Nordberg* – language misconstrued by the Bankruptcy Court. Mediaset's math is wrong for the reasons explained in the Liquidating Trustee's Initial Brief which, again, reflects that if the Bankruptcy Court had made its downward adjustment from the $21.5 million face value of the underlying claim, and included the $765,532 in liabilities Mediaset's expert identified—liabilities ignored by Mediaset in its analysis—America CVSG would have been insolvent, thus establishing his constructive fraud claim. Finally,

Mediaset's inclusion of assets of the Debtor Affiliates is wrong because those assets are not part of America CVSG's balance sheet.

The sole object of Mediaset's cross-appeal is the Bankruptcy Court's determination that it possessed *in personam* jurisdiction over Mediaset. The Bankruptcy Court reached the same conclusion a ***second time*** when it denied Mediaset's motion for reconsideration. The Bankruptcy Court relied upon an extensive factual record in the form of sworn deposition testimony and declarations submitted by both parties. The Bankruptcy Court properly applied the Due Process Clause of the Fifth Amendment and correctly concluded that it possessed jurisdiction over Mediaset.

On reconsideration, the Bankruptcy Court considered a newly submitted declaration by Santamaria which it found "merely clarifie[d] certain facts that Mediaset argues the Court improperly found" in its original Jurisdiction Order. The Bankruptcy Court made clear that "***all*** the facts upon which the Court relied in the Jurisdiction Order came from depositions and declarations submitted by the parties.… The Court is not aware, nor has Mediaset cited, any rule or case law that directs that it is inappropriate for the Court to consider what was submitted by both parties with respect to the [parties' summary judgment motions] that were not directly addressed in the written submissions." Reconsideration Order at 6. The Bankruptcy Court's statement regarding the facts upon which it based its ruling was

in response to Mediaset's baseless contention that the Bankruptcy Court erred in relying on facts purportedly not brief by the parties—a contention Mediaset repeats on appeal to this Court.

The Bankruptcy Court explained that the timing of Santamaria's physical presence (or lack thereof) in Miami did not change its findings regarding his involvement in the Broadcast Business, as well as being "*significantly* involved in all aspects of the post-FCC auction Romay issues and actions." The Bankruptcy Court correctly rejected Santamaria's claim that he was not involved in the Broadcast Business, recounting deposition testimony by Marcell Felipe and Santamaria himself, as well as other evidence "illustrat[ing] that Santamaria was involved in *significant* decisions relating to the Broadcast Businesses," and that to the extent his involvement terminated or was diminished, "there is *no question* that at the time of the Second Romay State Court Litigation, Santamaria was *regularly consulted*, and was *actively involved*, in the discussions regarding what to do." Finally, the Bankruptcy Court noted that Mediaset's exit from the Broadcast Business in 2018 did not "erase the eighteen months prior to the Transfer when Santamaria was *heavily involved* in the anticipated and ultimately filed lawsuit relating to the FCC auction." Based on the foregoing, the Bankruptcy Court correctly concluded that it possessed personal jurisdiction over Mediaset.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW [CROSS-APPEAL]

Whether the Bankruptcy Court correctly ruled that it possessed *in personam* jurisdiction over Mediaset.

## STANDARD OF APPELLATE REVIEW

The Liquidating Trustee incorporates herein the Standard of Review section in his Initial Brief. [ECF 15 at 5-6].[2]

An appellate court "may affirm on any grounds supported by the record, regardless of whether that ground was relied upon or even considered below." *PDVSA US Lit. Trust v. LukOil Pan Americas LLC,* 65 F.4th 556, 562 (11th Cir. 2023) (quotation omitted); *Washington v. Confederate Bands and Tribes of Yakima Indian Nation,* 439 U.S. 463, 476 n.20 (1979) (prevailing party may "defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the District Court…."). While a determination of a transferor's intent is a question of fact reviewed for clear error, the determination of whether such intent constitutes an "intent to hinder, delay, or defraud" under Section 548(a)(1)(A) is a question of law reviewed *de novo*. *Stratton v. Sioux Falls Paint & Glass (In re Stratton),* 23 B.R. 284, 287 (Bankr. S.D. 1982); *see also, e.g., In re Sentinel Mgmt. Grp., Inc.,* 728 F.3d 660, 668 (7th Cir. 2013) (rejecting district

[2] Unless otherwise indicated, all references to "ECF No. __" in this Brief shall be to the docket of the Bankruptcy Court in the AP.

court's "legal conclusion" that finding of fact that debtor's pledge of segregated funds as collateral for loans was driven by desire to stay in business was insufficient to constitute actual intent to hinder, delay, or defraud debtor's clients).

## STATEMENT OF THE CASE

### I. Nature of the [Cross-Appeal] Case

Mediaset filed its cross appeal in the event the Liquidating Trustee is successful in prosecuting his direct appeal of adverse rulings in the AP. [ECF No. 379 (Notice of Cross Appeal), Part 2 at 2]. In its cross-appeal, Mediaset challenges one interlocutory Order entered by the Bankruptcy Court holding that it possessed *in personam* jurisdiction over Mediaset. For the reasons explained by the Bankruptcy Court, as discussed herein, this Court should affirm that ruling.

### II. Course of Proceedings and Disposition Below

The Liquidating Trustee incorporates herein the Course of Proceedings and Disposition Below section in his Initial Brief. [ECF 15 at 8-11].

By Order dated January 3, 2025, the Bankruptcy Court denied Mediaset's *Motion for Reconsideration of Order on Motions for Summary Judgment Relating to Personal Jurisdiction* [ECF No. 405] ("Order Denying Reconsideration").

On January 16, 2025, Mediaset filed its *Amended Notice of Cross Appeal* of the Standing Order, the Jurisdiction Order, and the Order Denying Reconsideration (the "Amended NOA"). [ECF No. 406]. Mediaset's Amended NOA (a) excludes

three Orders identified in its initial *Notice of Cross Appeal* [ECF No. 379]: (i) Order Granting Plaintiff's Motion for Partial Findings Under Rule 52(c) entered May 8, 2024 [ECF 340]; (ii) Order Denying Mediaset's Ore Tenus Motion for Partial Findings (the "second FRCP 52 Order") [ECF No. 335]; and (iii) Order Granting Amended Motion to Strike Affirmative Defenses entered Aug. 15, 2022 [ECF No. 58] (collectively, the "Excluded Orders"), while (b) adding the Order Denying Reconsideration. Deleting the Excluded Orders from Mediaset's Amended NOA precludes their review by this Court.[3] Because Mediaset presents no argument regarding the Standing Order or Judicial Estoppel Order (as defined in the Amended NOA), *both* included in the Amended NOA, those Orders are also not subject to review by this Court.[4]

---

[3] *See Rosillo v. Holten,* 817 F.3d 595, 597 (8th Cir. 2016) ("Where an appellant specifies one order of the district court in his notice of appeal, but fails to identify another, the notice is not sufficient to confer jurisdiction to review the unmentioned order.").

[4] *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (failure to "plainly and prominently" raise issue by "devoting a discrete section of his argument" constitutes waiver of issue), *abrogated on other grounds*, *Nasrallah v. Barr,* 140 S.Ct. 1683 (2020); *United States v. Montenegro, Williams v. Bd. of Regents of Univ. Sys. of Ga.*, 477 F.3d 1282, 1303 (11th Cir. 2007) (failure to raise issue on appeal waives any argument as to that issue) (citing *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989) (a party's failure to elaborate on an issue on its merits in a brief, even if a passing reference is made to the district court's disposition of the issue, constitutes a waiver of that issue)) (citations omitted).

## III. Statement of Facts

The Liquidating Trustee incorporates herein the Statement of Facts section in his Initial Brief. [ECF 15 at 11-19].

### A. Jurisdiction Order

Mediaset is a Spanish company with its principal business in Madrid, Spain, where it conducts the vast majority of its business focused on television broadcasting. [ECF 342 at 4]. When Mediaset purchased the stock in Pegaso, two Mediaset employees were appointed to Caribevision's six-member board, Santamaria and Ana Cristina Castilla. *Id.* at 5. Moreover, Mediaset designated Santamaria to serve as an employee of Caribevision in which capacity he worked in "treasury and all the financial matters" and, according to Marcell Felipe, in-house counsel for the Debtor and Affiliated Debtors, at some point Santamaria served as CFO (of which entity or all, or when, was not clear from the deposition testimony). *Id.* In fact, Santamaria lived in Miami for several years while working on behalf of Mediaset for Caribevision. *Id.*[5]

Mediaset acknowledged doing business in the United States, *id.* at 13-14 and n.6, but the Bankruptcy Court made clear those activities were not the basis upon

[5] Upon the March 23, 2018, execution of the SPA, Mediaset was no longer involved in Pegaso, no longer had representatives on Caribevision's board, and Santamaria was no longer involved in the Broadcast Businesses. *Id.* at 8.

which it found sufficient minimum contacts to establish specific *in personam* jurisdiction over Mediaset. *Id.* at 14. Instead, it was Mediaset's "*deliberate choice* to become involved in radio and television broadcasting in the United States through Caribevision's ownership interest in America CVSG and its affiliates that establishes the minimum contacts." *Id.* (emphasis supplied). In that regard, the Bankruptcy Court found that in

> 2008 Mediaset bought shares in Pegaso, a Delaware corporation, that owned an interest in affiliated Broadcast Businesses (television and radio), operated in Florida and Puerto Rico, and it appears, perhaps in New York, through various indirect subsidiaries. Mediaset was involved in the radio and television broadcasting, not only through the two board seats on Caribevision *but most significantly through the embedding of Santamaria in all aspects of the financing of the Broadcast Businesses*. An example of this involvement is an email from Santamaria to the CFO of Caribevision - Jorge Salas, Carlos Vasallo and Marcell Felipe, describing negotiations for financing of the building in which the Broadcast Businesses operated, and attaching potential models for business plans.

*Id.* (emphasis supplied). The Bankruptcy Court noted Marcell Felipe's deposition testimony that "Mario Rodriguez was Mediaset's general counsel in Spain. So unlike Santamaria, he wasn't in Miami, but *all the legal matters*, I would generally run through Mario Rodriguez on the Telecinco side." *Id.* at 15 (emphasis supplied).[6]

[6] As stated in his Initial Brief (at 13 n.13), Telecinco is Mediaset's prior corporate name.

Accordingly, the Bankruptcy Court found that it was "clear that Mediaset's interest in Pegaso *was not passive*." *Id.* at 15 (emphasis supplied).

The Bankruptcy Court further found that Santamaria was "*directly involved* in the discussions regarding *what to do about* the situation with Romay, the dispute over the terms of the CSA, and the failure of the FCC auction to realize the amount of funds expected. Santamaria was copied on emails from lawyers, emails that were not sent to all Caribevision directors, discussing the lawyers' opinions with respect to *the auction results and potential consequences related to the Romay State Court Litigation*." *Id.* (emphasis supplied). The Bankruptcy Court explained that the evidence adduced at trial "illustrated more *how deeply involved Santamaria was in every aspect of these discussions*." *Id.* at 15 n.18 (emphasis supplied). Continuing, the Bankruptcy Court found that

> [a]lthough neither Mediaset nor Pegaso were listed as defendants in the Romay State Court Litigation lawsuit, Santamaria was *heavily involved* in the litigation process and strategy including signing the retainer agreement for counsel retained for all the defendants including America CVSG and Caribevision. Mediaset continued to be a shareholder in Pegaso *for over ten years* until it sold its shares to Grupo Colte pursuant to the SPA in 2018. And until that sale, *Mediaset continued to be involved in the operations of the Broadcast Businesses*.

*Id.* The Bankruptcy Court further found that

> [t]he evidence on summary judgment clearly illustrates that Mediaset had *every expectation* that litigation arising out of the Broadcast Businesses would take place in the United States – in fact, in Miami, Florida. The First Romay Litigation was filed in circuit court in Miami,

> Florida. Mediaset entered into two agreements relating directly to the Broadcast Businesses – the SPA and the CSA - in which Mediaset agreed that each agreement would be governed by the laws of Florida and venue of any dispute would be in the circuit court in Florida. And, in fact, when Grupo Colte failed to make the second installment under the SPA Mediaset filed a lawsuit against Grupo Colte in Miami-Dade County Circuit Court. *Thus, Mediaset had a clear expectation that litigation relating to the Broadcasting Businesses, and Mediaset's divesting of its interest in the Broadcast Businesses, would be litigated in the United States and could not be surprised that any litigation relating to its interest in Pegaso and Caribevision would end up being litigated in Florida, the situs of the injury and the situs of the business.*

*Id.* at 18-19 (emphasis supplied). The Bankruptcy Court concluded that application of the factors outlined by Eleventh Circuit case law in determining whether the exercise of jurisdiction "comports with fair play and substantial justice" were met on the facts before it. *See id.* at 19-20.

### B. Order Denying Reconsideration

In its Order Denying Reconsideration, the Bankruptcy Court considered a declaration submitted by Santamaria (the "Santamaria Dec."). [ECF No. 405 at 4; ECF No. 353-1[7]]. In support of its Rule 60(b)(1) motion which argued mistakes in the Bankruptcy Court's findings of fact, *see* [ECF No. 353 at 8], Mediaset focused its primary attention on the Bankruptcy Court's finding that Santamaria served in

[7] In its Order Denying Reconsideration, the Bankruptcy Court noted that if it lacked jurisdiction to rule on Mediaset's motion for reconsideration given the pendency of this appeal, it was advising this Court that it would deny the motion if it relinquished jurisdiction so the Bankruptcy Court could adjudicate that motion. *See* [ECF No. 405 at 7-8, Item No. 2].

various financial capacities for the Broadcast Businesses and that Santamaria lived in Miami until Mediaset sold its interests in Pegaso. *See* [ECF No. 405 at 4]. The Bankruptcy Court explained that its

> use of the defined term "Broadcast Businesses" reflects the business in which Pegaso was involved, and which Mediaset wanted a piece of, at the time of the acquisition in 2008, regardless of whether that happened before, after, or during the involvement of Romay or Vasallo. The foundation of the Court's finding of specific jurisdiction and the fairness of being brought into the jurisdiction of the United States with respect to that business, *is not based on who else owned the business; the issue is whether Mediaset, through Santamaria, was involved to such an extent that specific jurisdiction is constitutionally appropriate. As for Santamaria's return to Spain, whenever that was,* ***regardless of where Santamaria was located, the Court's findings with respect to his involvement in the Broadcast Businesses <u>doesn't change</u>. Santamaria's physical presence in the United States to conduct business in the United States, is <u>not necessary</u> if there is sufficient activity to warrant jurisdiction relating to the business in which Mediaset chose to involve itself.*** *Accord Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475-76 (1985). *Santamaria continued to be involved*, including with respect to facilitating the 2016 refinancing of the Banco de Sabadell mortgage, and was significantly involved in all aspects of the post-FCC auction Romay issues and actions.

*Id.* at 5 (emphasis supplied). Addressing the Santamaria Dec., the Bankruptcy Court explained that,

> [w]hile Santamaria claims that he was not involved in the business, the deposition testimony of Marcell Felipe, Santamaria's own testimony regarding the mortgage, as well as the *extensive involvement* of Santamaria, as reflected in emails submitted in support of the SJ Motions, all illustrate that Santamaria *was involved in significant decisions relating to the Broadcast Businesses*. To the extent that Santamaria's involvement in the financial aspects of the Broadcast Businesses was terminated, as the New Declaration asserts, or

> diminished, when Romay and then Vasallo got involved, *there is no question that, at the time of the Second Romay State Court Litigation,* ***Santamaria was regularly consulted, and was actively involved, in the discussions regarding what to do.***

*Id.* at 6 (emphasis supplied). Finally, the Bankruptcy Court found that "Mediaset's *immediate and complete exit from anything to do with the Broadcast Businesses upon the sale of the Pegaso stock* ***doesn't erase the eighteen months prior to the Transfer when Santamaria was heavily involved in the anticipated and ultimately filed lawsuit relating to the FCC auction****." Id.* at 7 (emphasis supplied).

## SUMMARY OF ARGUMENT

For the reasons explained in the Liquidating Trustee's Initial Brief and herein, the Court should reverse and render judgment in favor of the Liquidating Trustee because the Bankruptcy Court committed reversible error in failing to find that America CVSG made the Transfer with the intent to hinder or delay creditors. If the Court reverses on the actual fraud claim, it need not address the Liquidating Trustee's argument that the Bankruptcy Court committed reversible error in not making a downward adjustment from the face value of the underlying litigation claim in determining the solvency of America CVSG in connection with the Liquidating Trustee's constructive fraudulent transfer claim. If the Court reaches that issue, it should reverse for the reasons explained in the Liquidating Trustee's Initial Brief and herein. For the reasons explained in the Jurisdiction Order and the

Order Denying Reconsideration, the Court should affirm the Bankruptcy Court's ruling that it possessed jurisdiction over Mediaset.

**ARGUMENT**

**A. The Bankruptcy Court committed reversible error in failing to conclude, as a matter of law, that the Liquidating Trustee established that America CVSG made the Transfer with the intent to hinder or delay its creditors.**

Mediaset argues that the Liquidating Trustee is advancing a new standard whereby reference to the totality of the circumstances, including the badges of fraud, is unnecessary. As alluded to above, however, the Liquidating Trustee merely posited that the Bankruptcy Court's findings constituted direct evidence of the requisite intent such that there was no need to consider the badges of fraud. This approach is consistent with the law as explained by the Eleventh Circuit in *XYZ Options*. If, as Mediaset argues, these findings do not establish direct evidence, then consideration of the badges of fraud is appropriate, and that is how the Liquidating Trustee framed his Initial Brief.

Mediaset suggests that the Bankruptcy Court found that the Transfer was not made with actual intent to hinder or delay. While the Mem. Op. does state that it found no evidence of intent to hinder, delay, or defraud creditors, the only specific finding as to any of these disjunctive parts of Section 548(a)(1)(A) was that, after considering the totality of the circumstances surrounding the Transfer, including the non-exclusive list of badges of fraud, the Liquidating Trustee had not "satisfied his

burden of proof to demonstrate there was ***an actual intent to defraud creditors*** at the time of the Transfer." Mem. Op. at 35 (emphasis supplied). A review of the Mem. Op. confirms that the Bankruptcy Court made no specific findings as to intent to hinder or delay. Accordingly, statements by Mediaset that such findings were made (and are reviewed for clear error) is demonstrably wrong. Given the findings of fact the Bankruptcy Court did make, its failure to draw the legal conclusion that those facts established intent to hinder or delay constitutes reversible error.

**i) The statute; relevant principles of statutory construction**

Section 548(a)(1)(A) of the Bankruptcy Code provides that a trustee "may avoid any transfer…of an interest of the debtor in property…if the debtor…made such transfer…with actual intent to hinder, delay, *or* defraud" preexisting or future creditors. 11 U.S.C. § 548(a)(1)(A) (emphasis supplied). Where, like here, the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *U.S. v. Ron Pair Enterp., Inc.,* 489 U.S. 235, 241 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485 (1917)). As this Court has aptly stated, courts are "not free to add words to a statute that do not appear there." *Mittenthal v. Florida Panthers Hockey Club, Ltd.,* 472 F. Supp. 3d 1211, 1221 (S.D. Fla. 2020) (citation omitted). *Accord Levinson v. LHI Holding, Inc.*, 176 B.R. 255, 259 (M.D. Fla. 1994) ("This court refuses to read words into a statute or establish a construction that quite simply is not there. Establishing new statutory language is a

job better suited for the legislature."). Likewise, in *Engine Mfrs. Assn. v. South Coast Air Quality Mgmt. Dist.,* 541 U.S. 246, 256 (2004), the majority opinion criticized the dissenting opinion for reaching a different result because it felt free to read a non-existent requirement into the applicable statute, *see id.,* which is precisely what Mediaset is asking this Court to do through its varied arguments.

**ii) <u>Analysis</u>**

While Mediaset stipulates that Section 548(a)(1)(A) is phrased in the disjunctive, it nevertheless argues that any hindrance or delay must be fraudulent or done with improper or wrongful intent or conduct. Mediaset also argues that there must be a showing of harm to creditors. The short response to these related arguments is that Section 548(a)(1)(A) contains no such requirements.[8] For the Court to accept Mediaset's arguments, it would have to read into Section 548(a)(1)(A) "words…that do not appear there," *Mittenthal,* 472 F. Supp. 3d at 1221, something the Court is not at liberty to do. *See id.*; *Levinson*, 176 B.R. at 259.

[8] *See also, e.g., City Nat'l Bank of Fort Smith, Ark. v. Bateman (In re Bateman),* 646 F.2d 1220, 1225 n.5 (8th Cir. 1981) (applying intent to hinder, delay, or defraud language from the Bankruptcy Act of 1898, concluding lower courts committed reversible error ending their inquiry on objection to discharge of debt after determining lack of intent to defraud, without considering proof of intent to hinder or delay, then finding evidence sufficient to establish such intent and reversed and rendered judgment for objecting creditor).

Caselaw, ***including caselaw relied upon by Mediaset***, correctly construing the phrase "intent to hinder, delay, or defraud" rejects Mediaset's contention that intent to defraud is required to establish intent to hinder or delay under Section 548(a)(1)(A). *See, e.g., In re Wise,* 590 B.R. 401, 433-34 (Bankr. E.D. Mich. 2018); *Fruitticher v. Beach Comm. Bank (In re Fruitticher),* No. 3:18-cv-1326-JA-EMT, 2019 WL 1082355, at *4-6 (N.D. Fla. Mar. 7, 2019).[9] In *Wise,* the court stated that "[i]nterpreting § 727(a)(2)(A) [containing the same "intent to hinder, delay, or defraud" language in Section 548(a)(1)(A)] to require in all cases an intent to "defraud" ***would in effect read out of the statute the words "hinder" and "delay," rendering those words superfluous. This the Court cannot do***." *Id.* at 434 (emphasis supplied).[10] The court also cited the Fifth Circuit's opinion in *Wiggains* as rejecting the historical analysis (that fraudulent intent is required to establish intent to hinder, delay, or defraud) relied on by Mediaset. *See In re Wreyford*, 505 B.R. 47 (Bankr. D.N.M. 2014).[11]

---

[9] Mediaset Brf. at 26-27, 32, 35-36. One such case cited by Mediaset is *Mayo v. Pioneer Bank & Trust Co.,* 270 F.2d 823, 831 (5th Cir. 1959). There, the former Fifth Circuit held that "[a]lthough a transfer may have the effect of hindering or delaying or defrauding creditors, incidental effect is not enough to satisfy the requirement *of actual intent to defraud*." *Id.* (emphasis supplied).

[10] This supports the Liquidating Trustee's statement in his Initial Brief that, in making its ruling based solely on intent to defraud, Mem. Op. at 35, the Bankruptcy Court "read the words 'hinder' and 'delay' straight out of the statute."

[11] Mediaset Brf. at 27, 30. The Liquidating Trustee cited *Wiggains*, among many other cases, for the unremarkable proposition that given the disjunctive nature of the

As explained in *Wise,* "[t]he *Wiggains* court found this historical reasoning ***unconvincing in light of the 'plain meaning' of the words***, which the Supreme Court has cautioned 'should be conclusive, except in cases where the literal interpretation produces a result demonstrably at odds with the intention of the drafters.'" *Wise*, 590 B.R. at 433 (quoting *Ron Pair Enterp., supra*). The *Wise* court stated that it "likewise disagrees with the approach taken in *Wreyford*, based on the Supreme Court's instruction in *Ron Pair* to construe a statute according to its plain meaning." *Id.* Similarly, in *Fruitticher,* 2019 WL 1082355 at *5, the District Court held that the debtor's reading of "intent to hinder, delay, or defraud" in Section 727(a)(2)—the same reading of the identical language in Section 541(a)(1)(A) posited by Mediaset—"***would completely divest the words 'hinder' and 'delay' of any meaning or purpose***." *Id.* (citing *Husky Int'l Elecs., Inc. v. Ritz,* 136 S.Ct. 1581, 1590 (2016)) (emphasis supplied).[12] This Court should also reject Mediaset's contention that intent to defraud is required to establish intent to hinder or delay, and

---

statute, an intent to hinder or delay, *independent of an intent to defraud*, is sufficient to prevail on a claim under Section 548(a)(1)(A). *See* Initial Brief at 23-25 and n.20.

[12] Of note, one of the cases Mediaset cites in support of its contention that actual fraud must be shown even to establish intent to hinder or delay is the Supreme Court's decision in *Coder v. Arts*, 213 U.S. 223 (1909). The *Fruitticher* court acknowledged *Coder*, but noted that the Supreme Court "has not steadfastly maintained that the phrase "hinder, delay, or defraud" always requires a showing of actual fraud[,]" citing to and quoting from *Shapiro v. Wilgus*, 287 U.S. 348 (1932). *Fruitticher,* 2019 WL 1082355, at *4.

the cases upon which Mediaset relies which fail to give effect to the disjunctive structure of Section 541(a)(1)(A).

Mediaset places significant reliance upon *Stratton, supra,* arguing that it "directly rejects Romay's position that any intent to delay, without more, mandates a finding of actual fraud." Mediaset Brf. at 30. As demonstrated above, Mediaset's contention that actual fraud is required to establish intent to hinder or delay, is wrong, and the Liquidating Trustee does not argue that actual fraud is a requirement to establish intent to hinder or delay—he advances the exact opposite. The reason a finding of actual intent to hinder or delay is sufficient in itself is simple: it is the ***only*** showing required by the plain language of the statute. Finally, the facts in *Stratton* are easily distinguishable. *Stratton* involved debtors who executed a second mortgage in favor of a creditor after the "creditor…went to the debtor with an offer to delay proceedings in return for security on the debts owed by the debtor." *Stratton,* 23 B.R. at 287.

The *only* required showing under Section 548(a)(1)(A) at issue is whether America CVSG made the Transfer with the actual intent to hinder, delay, or defraud creditors. As previously explained, intent to hinder and delay is evidenced by the Bankruptcy Court's findings of fact that Mediaset—the *only* entity whose intent is

at issue[13]—made the Transfer with the actual intent to make it "harder," "more difficult," and "more challenging" for the Romay Parties to collect on their claims. The "more difficult" phrase used by the Bankruptcy Court is especially noteworthy given the Sixth Circuit's recent opinion in *Miller v. Wylie (In re Wylie),* 119 F.4th 1043, 1047 (6th Cir. 2024), where it held that, "to support a factual finding that the debtor acted 'with intent to hinder' a trustee under § 727(a)(2)(B), there must be evidence that the debtor acted with the specific intent to make it ***more difficult*** for the trustee to facilitate creditors' collection of debts from the estate." *Id.* (emphasis supplied).

This holding squarely supports the Liquidating Trustee's position that the Bankruptcy Court committed reversible error in not concluding, as a matter of law, that the Liquidating Trustee established his Section 548(a)(1)(A) claim given its findings regarding America CVSG's intent behind making the Transfer. If and to the extent that fraudulent or improper or wrongful intent or conduct is required (it is

---

[13] *Picard v. Merkin (In re Bernard L. Madoff Inv. Sec. LLC),* No. 11 MC 0012 (KMW), 2011 WL 3897970 at *4 (S.D.N.Y. Aug 31, 2011) ("Whether a conveyance is fraudulent under Section 548(a)(1)(A) is thus determined by reference to the intent of the *debtor-transferor* in making the transfer; the state of mind of the *transferee* is irrelevant.") (quotation omitted) (emphasis supplied by *Picard* court). This statement of law renders facile multiple references by Mediaset about its purported lack of knowledge or involvement in matters surrounding the Transfer, its self-serving explanation of the decision to not pay the Romay Parties any part of the Auction Proceeds, or the strength of it purported defenses to the Romay Parties' litigation claims.

not), such conduct is present as reflected in the Bankruptcy Court's findings of fact recited above and the WhatsApp discussion highlighted by the Bankruptcy Court. Mediaset contends that the findings regarding America CVSG's intent in making the Transfer are not associated with wrongful conduct. Mediaset Brf. at 37. When a person or entity transfers substantial assets—here $10 million—intending to make it "harder," "more challenging," and "more difficult" for a creditor to collect a debt necessarily involves improper or wrongful intent or conduct.

Contrary to Mediaset's argument, the Liquidating Trustee is ***not*** asking this Court to substitute its judgment for that of the Bankruptcy Court, but simply to reach the correct legal conclusion based on the findings of fact made by the Bankruptcy Court because it failed to make a determination of whether America CVSG made the Transfer with the intent to hinder or to delay, focusing instead solely on intent to defraud.[14] Mem. Op. at 35.

[14] Reference by Mediaset to the Bankruptcy Court's denial of summary judgment on the Liquidating Trustee's Section 548(a)(1)(A) claim has no bearing on the proper determination of that issue at trial, proceedings with widely different standards. *See Howard Indus., Inc. v. BADW Grp., LLC,* No. 20-5596, 2021 WL 2328477, at *4 (6th Cir. Mar. 2, 2021) ("Waldrop's argument that the district court's denial of Howard's motion for summary judgment precluded a decision in Howard's favor is without merit. As the district court pointed out, the burdens and standards that apply to a summary judgment motion and a bench trial are quite different. Upon consideration of Howard's motion for summary judgment, the district court's function was not to weigh the evidence and determine the truth of the matters asserted, but to determine whether there was a genuine dispute for trial.") (citation omitted). These different standards render Mediaset's reliance upon the Bankruptcy

Multiple references made by Mediaset to purportedly available assets for execution, also done by the Bankruptcy Court in its Mem. Op., are irrelevant. As explained in his Initial Brief, if having available assets after a transfer precluded the successful prosecution of an actual fraudulent conveyance claim, Section 548(a)(1)(A) would have to provide an exception to avoidance where, despite a transfer being made with the requisite intent, additional assets were available to the debtor-transferor's creditors. No such exception or savings clause exists in the statute. Related references by Mediaset to findings by the Bankruptcy Court that, post-Transfer, America CVSG was not left with unreasonably small capital or intended or believed it would be unable to pay debts as they accrued are equally wide of the mark. Those issues are elements of a constructive fraudulent transfer claims[15] not at issue in this appeal.[16]

---

Court's prior ruling on summary judgment misplaced, as well as its discussion of *Fruitticher*, Mediaset Brf. at 36, also decided at the summary judgment stage. In that regard, denial of the creditor's motion for summary judgment on the issue of the debtor's intent was based on the existence of genuine issue for trial, and inferences could have been drawn for or against denial of discharge of debt in bankruptcy. *See Fruitticher*, 2019 WL 1082355, at *9.

[15] *See* 11 U.S.C. § 548(a)(1)(B)(ii)(II)-(III).

[16] Likewise for references by Mediaset having purportedly given value in return for the Transfer. The issue of value concerns an essential element of a constructive fraudulent transfer claim, 11 U.S.C. § 548(a)(1)(B)(i), and part of the good faith and value defense not at issue in this appeal, 11 U.S.C. § 548(c).

The Court should reverse the Bankruptcy Court and render judgment for the Liquidating Trustee. The Court should hold that, given the Bankruptcy Court's findings of fact, it committed reversible error by failing to conclude that the Liquidating Trustee did not establish intent to hinder or delay under Section 541(a)(1)(A). If the Court were to make this ruling, it need not consider the Liquidating Trustee's appeal of the Bankruptcy Court's rejection of his constructive fraudulent transfer claim.

**B. The Bankruptcy Court committed reversible error in failing to start its downward adjustment of amount of the litigation contingency from the face value of the Romay Parties' claim.**

Mediaset disputes the Liquidating Trustee's position that the 40% discount applied by the Bankruptcy Court must start from the $21.5 million face value of the contingent litigation claim set forth in the state court complaint. But one of the cases cited by the Bankruptcy Court squarely supports that position. Mem. Op. at 20 (*In re The Heritage Org., L.L.C.*, 375 B.R. 230, 284 (Bankr. N.D. Tex. 2007) (the "[C]ourt should multiply the *face amount of the…liability times the probability that the contingency will occur*")) (emphasis supplied). This statement of law is consistent with the Eleventh Circuit's statement in *Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.),* 904 F.2d 588, 594 (11th Cir. 1990), that a contingent

liability cannot be the face value of the claim, that is, the downward adjustment should start from that face value.[17]

Mediaset suggests *Advanced Telecomm. Network, Inc. v. Allen (In re Advanced Telecomm. Network, Inc.)*, 490 F.3d 1325 (11th Cir. 2007), overruled *Nordberg*. *See* Mediaset Brf. at 53. That contention flies in the face of the prior panel precedent rule which provides that "the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting *en banc* or by the Supreme Court." *Smith v. GTE Corp.,* 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) (citation omitted). No such ruling regarding *Nordberg* has been made by the Supreme Court or the Eleventh Circuit sitting *en banc*.

As stated, *Nordberg* establishes the rule that a contingent liability cannot be set at face value, which means that the downward adjustment for a contingent liability should start from the face value of that liability. This is the very proposition ascribed to *Advanced Telecomm.* by one well-respected bankruptcy treatise. *See* Roy

---

[17] Mediaset argues that if the $21.5 million face value in the complaint is the correct starting point (it is, Initial Brief, Note 14), then "the discount factor would also have to be substantially adjusted to take into account all the other relevant information informing the assessment of the likelihood of success." Mediast Brf. at 55. Mediaset cites no authority for such an adjustment. Even if that proposition had support, it would require the Court to find that the Bankruptcy Court committed clear error in assigning a 40% discount to the litigation contingency, an error the Bankruptcy Court did not commit.

Geiger and Howard J. Steinberg, 3 *Bankruptcy Litigation* § 17:73 (Nov. 2024 Update) ("Courts have valued a contingent obligation *at its face multiplied by the probability it will become due*.") (citing *Advanced Telecomm.* and *Freeland v. Enodis Corp.,* 540 F.3d 721, 730 (7th Cir. 2008) ("Because an entity's liability on a contingent debt may never come into being, a contingent liability is not valued at its full amount when assessing the entity's solvency. Rather, a contingent liability is valued *at its face amount multiplied by the probability that it will become due*.") (emphasis supplied).

In *Advanced Telecomm.,* $39 million was the claim amount sought in the then-pending lawsuit. The debtor-defendant argued that the full amount of the ultimate $10 million settlement should be a downward adjustment to the value of its assets while the Allens argued, and the bankruptcy court found, that no downward departure from the $39 million was appropriate because the obligation arose after the challenged transfer. 490 F.3d at 1334-35. That is to say, both parties' and the bankruptcy court's analyses started from the $39 million sought in the complaint-one litigant sought a discount from that $39 million and the other advocated for no discount at all. *See id.* Ultimately, the *Advanced Telecomm.* court rejected both conclusions, finding error in the bankruptcy court's decision to not make any downward departure at all. Mediaset focuses on the phrase "expected value" used in *Advanced Telecomm.,* as well as in *Freeland, supra.* The Bankruptcy Court's 40%

downward adjustment reflected the "expected value" of the Romay Parties' $21,500,000 contingent litigation claim: $8,600,000 (= $21,500,000 x .40).

Mediaset contends that, assuming that the downward adjustment is from the face value of the claim and using the Liquidating Trustee's figures (which are based on the Bankruptcy Court's findings of fact), America CVSG would still be solvent by $700,000. Mediaset Brf. at 52, n.33. But that calculation ignores the $765,532 liability identified *by Mediaset's own expert witness*. Initial Brf. at 43 and n.35. If that liability is factored into the equation, America CVSG was insolvent by $65,532. *See id.* at 43.

Mediaset suggests that the assets of the Affiliated Debtors which would be subject to joint and several liability in the underlying litigation if the Romay Parties prevailed further establish America CVSG's solvency. But such assets would not be included in America CVSG's balance sheet, 11 U.S.C. § 101(32)(A) ("insolvent" definition applies balance sheet test), absent (i) a pre-bankruptcy alter ego finding (not made by the state court); or (ii) substantive consolidation of the bankruptcy estates of America CVSG and its Affiliated Debtors (not ordered by the Bankruptcy Court).[18]

---

[18] An order substantively consolidating multiple bankruptcy estates "combine[s] the assets and liabilities of separate and distinct, but related, legal entities into a single pool and treat[s] them as a single entity." *In re Alico Mining, Inc.,* 278 B.R. 586, 588 (Bankr. M.D. Fla. 2002).

In short, the Bankruptcy Court committed reversible error in not applying its 40% discount to the $21.5 million face value of the litigation claim asserted by the Romay Parties and by concluding that America CVSG was solvent on the date of the challenged transfer.

### C. The Bankruptcy Court correctly held that it possessed *in personam* jurisdiction over Mediaset.

Both parties stipulated that the Bankruptcy Court could resolve whether it possessed *in personam* jurisdiction over Mediaset on summary judgment. Jurisdiction Order at 4. The specific contours of Mediaset's cross appeal are unclear since nowhere in the 8 pages of its 65-page brief dedicated to its cross-appeal does Mediaset argue that summary judgment was inappropriate because of the existence of genuine issues of material fact or that the Liquidating Trustee was not entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

Regardless, because bankruptcy court jurisdiction is nationwide, the Bankruptcy Court properly applied the legal framework required by the Due Process Clause of the Fifth Amendment. *See id.* at 10-12. The Bankruptcy Court noted the two categories of personal jurisdiction and concluded that "Mediaset's activities within the United States established sufficient minimum contacts to be subject to this Court's jurisdiction related to anything connected with the Broadcast Businesses, that is, specific jurisdiction." *See id.* at 12-20. More specifically, the

Bankruptcy Court found that Mediaset "purposefully availed itself of the privilege of conducting activities within the United States thereby purposefully establishing minimum contacts with the United States." *See id.* at 13-17. In support of its ruling, the Bankruptcy Court relied upon extensive facts of record. *See* Order Denying Reconsideration at 6 (stating reliance upon depositions and declarations in support of and in opposition to pending cross-motions for summary judgment). The Bankruptcy Court then concluded that the assertion of personal jurisdiction over Mediaset comported with "fair play and substantial justice." Jurisdiction Order at 17-20. On reconsideration, the Bankruptcy concluded for the second time that it possessed jurisdiction over Mediaset despite its submission of a new declaration from Santamaria in which he tried to disentangle himself and Mediaset from their substantial involvement in the Broadcast Business and litigation involving the Romay Parties. *See generally* Order Denying Reconsideration.

For its cross-appeal, Mediaset argues that mere stock ownership or representation on a board of directors is insufficient to establish "minimum contacts." This unremarkable statement of law is true as far as it goes, but it conveniently omits reference to the substantial record evidence upon which the Bankruptcy Court relied which establishes that Mediaset's contacts with the forum went far beyond mere stock ownership and having representation of Caribevision's board of directors. Mediaset cites *Burger King v. Rudzewicz,* 471 U.S. 462 (1985),

as holding that a "mere contract" in the forum did not establish minimum contacts, but a 20-year relationship with "wide-reaching contacts and exacting regulations" sufficed. Mediaset Brf. at 59-60. Here, there is no single underlying contract at issue, and the facts of record otherwise establish Mediaset's extensive involvement in the Broadcast Business and matters involving the Romay Parties and related litigation. The Bankruptcy Court otherwise specifically considered, and correctly applied, the legal standards enunciated in *Burger King*. *See* Jurisdiction Order at 17-19.

The more apt reference to applicable Supreme Court caselaw is that Court's opinion in *International Shoe Co. v. State of Wash.,* 326 U.S. 310 (1945). *See* Jurisdiction Order at 15-16. There, the Supreme Court held that Washington could assert jurisdiction over International Shoe Co. despite its argument that it had no office in the State, it had not entered into contracts for the sale or purchase of goods, it lacked agents and was not incorporated in the state. Rejecting the argument that mere employment of salesman supervised out of its headquarters in Missouri was an insufficient contact, the Supreme Court noted that International Shoe Co.'s activities in Washington "were systematic and continuous through the years in question." 326 U.S. at 320. The Bankruptcy Court explained that "Mediaset's contacts with the United States, with Florida, ***were systematic and continuous for a period of over ten years***." Jurisdiction Order at 16 (emphasis supplied).

Mediaset contends that in "acquiescing to a Florida forum for resolving disputes," it was merely agreeing "to the parameters for litigation with Grupo Colte, a contingency it thought unlikely to even occur." Mediaset Brf. at 61. The Court should reject this contention for at least three reasons: First, regardless of its reasoning, Mediaset "*voluntarily* signed the SPA with these [venue and jurisdiction] provisions included." Jurisdiction Order at 7 n.13 (emphasis supplied). Second, the fact that the SPA concerned potential litigation with Grupo Colte is irrelevant. The critical fact is that Mediaset agreed to resolution of legal disputes in the relevant forum—the United States. Third, and beyond just the SPA,

> Mediaset had *every expectation* that litigation arising out of the Broadcast Businesses would take place in the United States – in fact, in Miami, Florida. The First Romay Litigation was filed in circuit court in Miami, Florida. Mediaset entered into two agreements relating directly to the Broadcast Businesses – the SPA and the CSA - in which Mediaset agreed that each agreement would be governed by the laws of Florida and venue of any dispute would be in the circuit court in Florida. And, in fact, when Grupo Colte failed to make the second installment under the SPA Mediaset filed a lawsuit against Grupo Colte in Miami-Dade County Circuit Court. *Thus, Mediaset had a* ***clear expectation*** *that litigation relating to the Broadcasting Businesses, and Mediaset's divesting of its interest in the Broadcast Businesses, would be litigated in the United States and* ***could not be surprised that any litigation relating to its interest in Pegaso and Caribevision would end up being litigated in Florida, the situs of the injury and the situs of the business.***

*Id.* at 18-19 (emphasis supplied).

Mediaset places heavy reliance upon *AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust),* Adv. Pro. No. 052006, 2006 WL 2850110 (Bankr. D. Del. Oct. 2, 2006) as purportedly involving facts "closely resemble[ing]" those before this Court. Mediaset Brf. at 61. Mediaset conveniently neglects to mention the fact that the Bankruptcy Court carefully considered *AstroPower,* finding it "***easily distinguishable***." Jurisdiction Order at 16 (emphasis supplied).[19] The Bankruptcy Court explained that in *AstroPower,* the court held that plaintiff failed to demonstrate that a foreign entity's purchase of stock from a debtor, a transaction alleged to be constructively fraudulent, was sufficient to establish minimum contacts. *Id.* The Bankruptcy Court further explained that the *AstroPower* court noted the absence of other allegations beyond the purchase of the stock to support a finding that the defendant purposefully availed itself of the privilege of

[19] The Bankruptcy Court found the facts in *Shaffer v. Heitner,* 433 U.S. 186 (1977), also cited by Mediaset, equally distinguishable. *Id.* at 16-17. Mediaset no longer cites to or relies upon *Shaffer* as part of its cross-appeal. Also distinguishable is *Reynolds v. Behrman Cap. IV, L.P.,* 2019 U.S. Dist. LEXIS 21630 (N.D. Ala. Feb. 11, 2019), cited by Mediaset. Mediaset Brf. at 61. First, the case was before the district court on a motion to dismiss. Second, the relevant forum was Alabama, not the United States, such that the analysis was governed by different standards set forth in *Calder v. Jones,* 465 U.S. 783 (1984). Third, no part of the Bankruptcy Court's personal jurisdiction analysis is based on receipt of fraudulent transfers outside the forum. Fourth, *Reynolds* involved a dividend recapitalization in which the targets had no involvement, whereas here, Mediaset was heavily and for several years involved in the Broadcast Business and matters involving the Romay Parties, including litigation, all within the relevant forum—the United States.

conducting activities within the state. *Id.* Concluding its takedown of *AstroPower*, the Bankruptcy Court stated that the record evidence established that Santamaria "was not only a board member; he was, on behalf of Mediaset, ***actively involved in the Broadcast Businesses***." *Id.* at 17 (emphasis supplied).

Reference by Mediaset to the fact that it did not reach into the forum to purchase its Pegaso stock is wholly irrelevant. What is relevant is that Mediaset owned the stock for 18 years and was actively involved in the Broadcast Business operated in the United States, as well as the litigation involving the Romay Parties in the United States, all of which were direct, systematic, and extensive contacts with the forum. Also irrelevant is the purported fact that, in divesting its stock holdings, Mediaset did not reach into the forum, but negotiated and executed the SPA from Spain, as well as purportedly having no communications with Caribevision or America CVSG regarding the Transfer.

Mediaset contends that the Bankruptcy Court relied on deposition testimony that "was too vague to be probative and did not provide any evidence as to the circumstances around the time of the 2018 Transfer." Mediaset Brf. at 63. But on reconsideration, having considered a supplemental declaration from Santamaria, the Bankruptcy Court explained:

> While Santamaria claims that he was not involved in the business, the deposition testimony of Marcell Felipe, Santamaria's own testimony regarding the mortgage, as well as the extensive involvement of

> Santamaria, as reflected in emails submitted in support of the SJ Motions, ***all illustrate that Santamaria was involved in significant decisions relating to the Broadcast Businesses***. To the extent that Santamaria's involvement in the financial aspects of the Broadcast Businesses were terminated, as the New Declaration asserts, or diminished, when Romay and then Vasallo got involved, ***there is no question that at the time of the Second Romay State Court Litigation, Santamaria was regularly consulted, and was actively involved, in discussions regarding what to do.***
>
> This leads to the last point. While Mediaset's involvement with Pegaso and the Broadcast Business terminated upon the sale of the stock in March 2018, the months, indeed at least two years leading up to that sale were consumed by the FCC Auction, its results, and the anticipated, and then the actual dispute with Romay. … As applied here, Mediaset's *immediate and complete exit from anything to do with the Broadcast Businesses upon the sale of the Pegaso stock* ***doesn't erase the eighteen months prior to the Transfer when Santamaria was heavily involved in the anticipated and ultimately filed lawsuit relating to the FCC auction***."

Order Denying Reconsideration at 6-7 (emphasis supplied). With respect to the referenced emails, Mediaset contends that the Bankruptcy Court "wrongly inferred direct involvement in the Broadcast Businesses," Mediaset Brf. at 63, because, according to Mediaset, they did not concern the day-to-day operation or management of the Broadcast Businesses and that inference rendered summary judgment improper. But in its Jurisdiction Order (pg. 14), the Bankruptcy Court explained that the email from Santamaria described "negotiations for financing of the building ***in which the Broadcast Businesses operated, and attach[ed] potential models for business plans***." (emphasis supplied). This statement squarely refutes Mediaset's

contention that the Bankruptcy Court "wrongly inferred direct involvement in the Broadcast Businesses." Mediaset Brf. at 63.

To the extent that certain of the emails did not concern the day-to-day operation or management of the Broadcast Business, they nevertheless more fundamentally evidence Mediaset's active involvement in matters that support the Bankruptcy Court's exercise of personal jurisdiction over Mediaset. For example, in its Jurisdiction Order (pg. 15), the Bankruptcy Court noted emails on which Santamria was copied "discussing the lawyer's opinions with respect to the auction results and potential consequences related to the Romay State Court Litigation." In a footnote to this statement the Bankruptcy Court noted that "[t]he evidence at trial illustrated ***more how deeply involved Santamaria was in every aspect of these discussions***…." Jurisdiction Order at 15 n.18 (emphasis supplied).

Finally, Mediaset argues that the Bankruptcy Court erred in denying its motion for reconsideration of the Jurisdiction Order. Mediaset acknowledges that a trial court's decision whether to grant reconsideration under Rule 60(b) is a matter within its discretion. The standard of review of discretionary determinations is exceedingly narrow—the reviewing court must find that the trial court made a clear error of judgment or applied the incorrect legal standard.[20] In its 1-page argument

---

[20] *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc) ("[W]hen employing an abuse-of-discretion standard, [the appellate court] must affirm unless

challenging the Order Denying Reconsideration, Mediaset Brf. at 64-65, Mediaset does not argue that the Bankruptcy Court did either thing.

Instead, Mediaset rehashes its argument regarding the timing of Santamaria's and Mediaset's involvement in the Broadcast Business—something the Bankruptcy Court explicitly addressed in the Jurisdiction Order and Order Denying Reconsideration, confirming in the latter Order that any timing issues alluded to by Mediaset did not change the analysis or result. For the reasons explained in the preceding paragraph, argument by Mediaset regarding the purported "lack of any involvement in the operation of the underlying Broadcast Business" based on emails referenced by the Bankruptcy Court is simply wrong.

Based on the foregoing, the Court should affirm the Jurisdiction Order and Order Denying Reconsideration.

## CONCLUSION

This Court should reverse the Bankruptcy Court's holding that the Liquidating Trustee failed to establish his § 548(a)(1)(A) claim and remand with direction for

---

[it] find[s] that the [trial] court has made a clear error of judgment, or has applied the wrong legal standard."); *United States v. Calixte,* No. 23-14212, 2024 WL 4799712, at *2 (11 Cir. Nov. 15, 2024), an appellate court's review "under the abuse of discretion standard is limited: [it] give[s] the trial court considerably more leeway than if [the appellate court] were conducting *de novo* review, and allow 'a range of choice'—meaning "[the appellate court] will affirm even though [it] might have decided the matter differently in the first instance[.]" *Id.* (internal and external citations omitted).

the Bankruptcy Court to enter judgment for the Liquidating Trustee. The Bankruptcy Court committed reversible error in not concluding, based on the findings of fact it made, that the Liquidating Trustee had established actual intent to "hinder" or "delay" under Section 548(a)(1)(A). The Bankruptcy Court committed reversible error in concluding that only one such badge was present, when it had found at least three, and relying upon the rule stated in *XYZ Options* that one badge of fraud is insufficient to establish actual intent. Based on the three badges it found, the Bankruptcy Court should have found actual intent under the Eleventh Circuit's opinions in *S.E.C. v. Elliott,* 953 F.2d 1560, 1568 (11th Cir. 1992) and *United States v. South Capital Constr., Inc.,* 758 F. App'x 676, 681 (11th Cir. 2018). If this Court reaches the issue of the Bankruptcy Court's valuation of the contingent liability, it should reverse because the Bankruptcy Court failed to start the downward adjustment from the face value of the demand in the underlying state court complaint. Finally, for the reasons explained by the Bankruptcy Court, it properly found that it possessed personal jurisdiction over Mediaset.

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this Brief complies with the type-volume requirement in Fed. R. Bankr. P. 8016(d)(2)(A)(i) and typeface requirement in Fed. R. Bankr. P. 8015(a)(5). This Brief was prepared in Microsoft Word 14-point Times New Roman type and contains 9,398 words.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on the 12th day of March, 2025, by electronic transmission through the Court's CM/ECF system upon all parties on the attached CM/ECF Service List.

Dated: March 12, 2025

BERGER SINGERMAN LLP
1450 Brickell Avenue, Ste. 1900
Miami, FL 33131
Telephone: (305) 755-9500
Facsimile: (305) 714-4340

By: */s/ Paul A. Avron*
Paul Steven Singerman
Florida Bar No. 378860
Paul A. Avron
Florida Bar No. 50814
pavron@bergersingerman.com
-and-

Monique D. Hayes, Esq.
Florida Bar No. 0841573
monique@dgimlaw.com
DGIM LAW PLLC
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708
Isaac Marcushamer

Florida Bar No. 060373
isaac@marcushamer.com
c/o DGIM LAW PLLC
2875 NE 191st Street, Suite 705
Aventura, FL 33180
Phone: (305) 763-8708

*Co-Counsel for Appellant/Cross-Appellee, Omar Romay, Liquidating Trustee*

**CM/ECF SERVICE LIST**

- **Paul A. Avron**
  pavron@bergersingerman.com,mmorgan@bergersingerman.com,drt@ecf.inforuptcy.com,efile@bergersingerman.com,drt@bergersingerman.com
- **Isaac Meyer Marcushamer**
  isaac@dgimlaw.com,isaac_876@ecf.courtdrive.com,colleen@dgimlaw.com,veronica@dgimlaw.com,eservice@dgimlaw.com,monique@dgimlaw.com
- **Noticing Bankruptcy Court**
  CMECF_support@FLSB.uscourts.gov
- **Darrell Winston Payne**
  dpayne@stearnsweaver.com,cveguilla@stearnsweaver.com
- **Leanne McKnight Prendergast**
  Leanne.Prendergast@pierferd.com
- **Patricia Ann Redmond**
  predmond@stearnsweaver.com,cgraver@stearnsweaver.com,rross@stearnsweaver.com,jmartinez@stearnsweaver.com,jless@stearnsweaver.com,mharder@stearnsweaver.com,mfernandez@stearnsweaver.com