CASE NO. 1:24-cv-23819-RKA

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA**

OMAR ROMAY, Liquidating Trustee,

Appellant / Cross Appellee,

v.

MEDIASET ESPAÑA COMUNICACIÓN, S.A.,

Appellee / Cross Appellant.

=========================================================
**CROSS APPELLANT'S REPLY BRIEF**
=========================================================

Patricia A. Redmond, Esq.
Florida Bar Number 303739
Darrell Payne, Esq.
Florida Bar Number 773300
**STEARNS WEAVER MILLER**
Museum Tower
150 West Flagler Street, Suite 2200
Miami, Florida 33130
Telephone: (305) 789-3200
Email: predmond@stearnsweaver.com
Email: dpayne@stearnsweaver.com

*Co-Counsel for Appellee / Cross
Appellant Mediaset*

Leanne McKnight Prendergast, Esq.
Florida Bar No. 59544
**PIERSON FERDINAND LLP**
12620 Beach Blvd. Suite 3 #126
Jacksonville, Florida 32246
(904) 479-6612
leanne.prendergast@pierferd.com

*Co-Counsel for Appellee / Cross
Appellant Mediaset*

# TABLE OF CONTENTS

ARGUMENT ................................................................................................ 1

I.   Romay Has Not Shown, and Mediaset Does Not Have, the Minimum Contacts Required for Specific Jurisdiction. ...................................................................... 1

   A.   The Fact that Romay Never Argued Mediaset Was Actively Involved in the Broadcast Businesses Underscores the Lack of Factual Support for this Assertion....................................................................................................... 2

   B.   Romay Asks the Court to Rely on Vague Testimony and Improper Inferences for Its De Novo Review. ............................................................... 5

   C.   Romay Does Not Identify Facts Establishing Minimum Contacts. ........... 9

   D.   Romay Fails to Address the Issues with the Order on the Motion for Reconsideration. ............................................................................................13

CONCLUSION ........................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................... 6

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ....................... 10, 12, 13, 16

*Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201 (11th Cir. 2015) ......................... 9

*Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*,
    230 F.3d 934 (7th. Cir. 2000) ............................................................................... 11

*Johnson v. Royal Caribbean Cruises,* 474 F. Supp. 3d 1260 (S.D. Fla. 2020) ........ 9

*Johnson v. Woodcock*, 444 F.3d 953 (8th Cir. 2006) ............................................. 16

*Kernel Records Oy v. Mosley*, 694 F.3d 1294 (11th Cir. 2012) ............................. 6

*Merlino v. Harrah's Entm't, Inc.*, 2006 U.S. Dist. LEXIS 6411
    (E.D. Pa. February 17, 2006) ............................................................................... 13

*Reynolds v. Behrman Capital IV, L.P.*, 2019 U.S. Dist. LEXIS 21630
    (N.D. Ala. Feb. 11, 2019) ..................................................................................... 8

*Searcy v. Knight (In re Am. Int'l Refinery),* 2009 Bankr. LEXIS 5586,
    2009 WL 8602809 (Bankr. W.D. La. Dec. 22, 2009) ........................................... 11

*Shaffer v. Heitner*, 433 U.S. 186 (1977) ............................................................... 11

*Walden v. Fiore,* 571 U.S. 277 (2014)..................................................................... 11

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)......................... 10

## ARGUMENT

### I.   Romay Has Not Shown, and Mediaset Does Not Have, the Minimum Contacts Required for Specific Jurisdiction.

This case has been pending for four years and Romay has taken fulsome discovery. Yet, for de novo review of personal jurisdiction, Romay identifies no facts upon which minimum contacts can be established. Rather, he now adopts, for the first time, the fallacy that Mediaset was actively involved in the Broadcast Businesses (which, as defined by the Bankruptcy Court, means the collective operation of television and radio stations through the America CV entities) (which began operating in 2010 as a result of the Caribevision/Romay joint venture). *See* ECF 342, 17; 393, 4. In none of the extensive briefing on personal jurisdiction, however—not on the motion to dismiss,[1] the motion for interlocutory appeal,[2] cross motions for summary judgment or even the motion for reconsideration—did Romay ever assert that Mediaset had been actively involved in the Broadcast Businesses. Because he knew it hadn't been.

Romay does not dispute the record evidence that establishes that he froze Mediaset out from the onset of the Broadcast Businesses and that his successor effectively did the same. Nor does he dispute that Mediaset had no role, even in Caribevision, after 2010, except as an indirect shareholder and board member (or

---

[1] denied without an evidentiary hearing or opinion, ECF 37
[2] denied as requiring a fact-intensive analysis, ECF 50

that the Caribevision board met only once between 2013 and 2018 - the special meeting in Spain). *See* ECF 34-1; 353-1; Cross Appellant's Brief, 19-21.

Consequently, there is no evidence supporting any finding that Mediaset was embedded in the operations or day-to-day management of the Broadcast Businesses after Romay took control in 2010. Rather, the scant evidence cited by Romay pertains to Mediaset's limited involvement, as an indirect equity owner and board director, in a few critical issues related directly to Mediaset's limited role. Even exhibits cited by Romay demonstrate that Mediaset did not have access to the basic financial information involved in the day-to-day operations and management of the Broadcast Businesses. *See* ECF 176-1 Ex. P (requesting that America CVSG's CFO prepare a business plan and that Vasallo validate it).

Romay nevertheless seeks to take advantage of the improper inferences and vague deposition testimony relied upon by the Bankruptcy Court to sustain personal jurisdiction. But neither of those bases withstand the scrutiny of de novo review. Romay, having failed to identify facts establishing minimum contacts, has failed to carry his burden of proving personal jurisdiction.

### A. The Fact that Romay Never Argued Mediaset Was Actively Involved in the Broadcast Businesses Underscores the Lack of Factual Support for this Assertion.

Romay's motion for summary judgment addressed numerous issues and attached 48 exhibits. ECF 176. His sole argument for specific jurisdiction was that

"Mediaset, along with the entire board of Caribevision, was warned that the proposed Transfer could be considered a fraudulent transfer." ECF 176, 14.

In response, Mediaset clarified that the referenced email was never sent to Mediaset, and the "warning" was not about the Transfer. ECF 183. Mediaset also incorporated its motion for partial summary judgment as to personal jurisdiction (ECF 175) and the declaration of Ángel Santamaria (ECF 34-1) showing Mediaset's lack of minimum contacts. Mediaset specifically denied any involvement with America CVSG. ECF 34-1 ¶16. Romay did not dispute the facts set forth by Mediaset, but instead argued they supported general and specific jurisdiction. ECF 188, 6; 182. Mediaset refuted each of these arguments. ECF 183; 187; 175.

At the pretrial conference, the Bankruptcy Court orally announced it would grant Romay's motion as to personal jurisdiction and would issue a written opinion after trial. Ultimately, the Bankruptcy Court was not persuaded by Romay's arguments, but based minimum contacts on the erroneous conclusion that Mediaset had been actively involved in the Broadcast Businesses. *See* ECF 342, 17. This conclusion was not based on the parties' briefing, but on vague deposition testimony from Romay's exhibits and inferences favoring Romay. *See* ECF 342, 5, 7, 14-15.

Following post-trial briefing, Mediaset filed its motion for reconsideration and declaration clarifying that it had only been actively involved in Caribevision until 2010 and had never been actively involved in the Broadcast Businesses. ECF

353; 353-1; 393. While Romay opposed the motion, he did not dispute any of the facts set forth therein or argue that the Bankruptcy Court's conclusions were supported by the record. *See* ECF 373.

Instead, Romay argued that Mediaset should have raised its lack of active involvement in the Broadcast Businesses sooner. *See id*. In response, Mediaset noted it has consistently maintained it was not involved in America CVSG and had only limited involvement in Caribevision after 2010 and Romay has never disputed those facts. ECF 393 (citing ECF 26; 34; 41; 175; 35; 46; 182; 176; 188). Mediaset further pointed out that it was Romay's burden to designate specific facts establishing personal jurisdiction. ECF 393. Accordingly, because Romay never asserted Mediaset was actively involved in the Broadcast Businesses, Mediaset had no reason to set forth additional facts showing it was not. *Id.*

Now Romay asserts that Mediaset "baseless[ly]" contends that "the Bankruptcy Court erred in relying on facts purportedly not brief[ed] by the parties." Response, 5. But that assertion misses the point. Mediaset is not arguing that the Bankruptcy Court could not rely on exhibits rather than matters explicitly briefed by the parties on summary judgment. Rather, the point is: (i) because Romay never argued that Mediaset was actively involved in the Broadcast Businesses, the Bankruptcy Court did not have the factual background to understand the vague deposition testimony upon which it relied (even after trial, as personal jurisdiction

had been disposed of by the oral ruling at the pretrial conference) and (ii) the fact that Romay never made this argument in three years of briefing and after robust discovery further demonstrates that it is wholly unsupported by the facts. Indeed, Romay does not dispute that he froze out Mediaset from the inception of the Broadcast Businesses and blocked its access to business information and documents, and that Vasallo did much the same. *See* Cross Appellant's Brief, 19-21; ECF 353-1; Response.

## B. Romay Asks the Court to Rely on Vague Testimony and Improper Inferences for Its De Novo Review.

Romay does not identify facts supporting personal jurisdiction, but essentially asks the Court, on de novo review, to rely on the same vague testimony and improper inferences as the Bankruptcy Court. *See* Response, 28-35. He repeatedly cites to the Bankruptcy Court's order rather than the record. *Id*. He even recites, as facts, matters from the Bankruptcy Court's order which have been shown to be incorrect, such as the assertion that Santamaria lived in Miami for "several years." *See id.* at 9. And, while Romay contends "the Bankruptcy Court relied upon extensive facts of record," the Bankruptcy Court cited only insufficiently probative testimony and inferences from four emails. *See id.,* 29; Cross Appellant's Brief, 62-63; ECF 342, 5, 7, 14-15.

Romay ignores that all four emails address extraordinary matters directly impacting Caribevision stakeholders and the value of Caribevision—a refinance requiring Caribevision stakeholder guarantees, the FCC Auction and the Romay

litigation—and thus support the inference that Mediaset was monitoring its investment and was involved in extraordinary decisions as a stakeholder in a small business. *See* Cross Appellant's Brief, 63; Response, 34-35. Romay does not explain why the Court should instead infer that Mediaset was actively involved in the Broadcast Businesses. *See* Response, 34-35. Nor does Romay respond to Mediaset's contention that the latter inference requires speculation. *See* Cross Appellant's Brief, 63; Response, 34-35; *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) ("Although all justifiable inferences are to be drawn in favor of the nonmoving party, inferences based upon speculation are not reasonable"). Moreover, Romay does not address the requirement that, in adjudicating Romay's summary judgment motion, all reasonable inferences should have been drawn in Mediaset's favor. *See* Cross Appellant's Brief, 63; Response, 34-35. And Romay does not address the fact that the inference of Mediaset's active involvement is contradicted by Mediaset's declaration (ECF 353-1) or the jurisprudence precluding weighing evidence and fact-finding on summary judgment. *See* Cross Appellant's Brief, 63; Response, 34-35; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).[3]

Instead, Romay stresses that, in the email about the refinance requiring stakeholder guarantees, Santamaria "attached potential models for business plans."

---

[3] Romay asserts Cross Appellant's Brief does not argue that "the Liquidating Trustee was not entitled to judgment as a matter of law." Response, 28. But of course it does. *See* Cross Appellant's Brief, 62-64.

*See* Response, 34. While Romay contends this shows Mediaset's active involvement in the Broadcast Businesses, the actual email shows the opposite. The email, from Santamaria to the CFO of the Broadcast Businesses, says in pertinent part, "[s]end [the bank] the rest of the missing documentation and send them a 2-3 year Business Plan. I attach a couple of models that you can use. You should build it and have Carlos [Vasallo] validate it." ECF 176-1 Ex. P. This supports the inference that Mediaset lacked the information about the Broadcast Businesses necessary to build a short-term business plan as well as access to the documents required for their loan refinance. It thus underscores Mediaset's lack of active involvement in the Broadcast Businesses.

Similarly, Romay does not contest that, contrary to the Bankruptcy Court's interpretation, the deposition testimony actually described circumstances that ended eight years prior to the Transfer. *See* Cross Appellant's Brief, 62-63; Response, 33. Nor does Romay contradict Mediaset's assertion that the testimony, lacking date references and entity names, was too vague to be probative. *See* Cross Appellant's Brief, 62-63; Response, 33. Instead, he cites to the order denying Mediaset's motion for reconsideration, in which the Bankruptcy Court again relied on this same vague testimony and the improper inferences it drew in Romay's favor from the four emails. *See* Response, 33-34; Cross Appellant's Brief, 65; ECF 405, 6.

Without the insufficiently probative deposition testimony and improper

inferences, Romay's newly adopted argument that Mediaset was actively involved in the Broadcast Businesses fails. And with it fails the conclusion that Mediaset's contacts with the United States "were systematic and continuous for a period of over ten years," as well as Romay's attempts to distinguish the cases cited by Mediaset. *See* Response, 30; *AstroPower Liquidating Trust v. Xantrex Tech., Inc. (In re AstroPower Liquidating Trust),* 2006 Bankr. LEXIS 2443 *14-15 (Bankr. D. Del. Oct. 2, 2006) (rejecting the argument that the defendants had "availed themselves" of the forum by "intentionally acting to purchase stock from the Debtor"); *Reynolds v. Behrman Capital IV, L.P.*, 2019 U.S. Dist. LEXIS 21630 (N.D. Ala. Feb. 11, 2019) (rejecting the argument that non-resident shareholders had minimum contacts with the forum because they had "business dealings" with and ownership interests in the debtor and its parent company).[4]

---

[4] *Rev'd on other grounds*, *Reynolds v. Behrman Capital IV L.P.*, 988 F.3d 1314, 1325, 1325 n. 4 (11th Cir. 2021). The trustee filed suit in Alabama state court and the action was removed to federal court; the district court held, based on the doctrine of derivative jurisdiction, it could only exercise personal jurisdiction if the defendants had minimum contacts with Alabama. 2019 U.S. Dist. LEXIS 21630 at *13. On appeal, the Eleventh Circuit reversed *only* as to applicability of derivative jurisdiction; it did not reach the issue of minimum contacts with Alabama. *See* 988 F.3d at 1325, 1325 n. 4.

While Romay argues *Reynolds* is inapplicable because it applied the Fourteenth Amendment, the language and policy considerations of the Due Process Clauses of the Fifth and Fourteenth Amendments are virtually identical, so that decisions analyzing personal jurisdiction under the Fourteenth Amendment's Due Process Clause provide guidance in evaluating personal jurisdiction in the context of the Fifth Amendment's Due Process Clause. *See Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1219 n.25 (11th Cir. 2009).

### C. **Romay Does Not Identify Facts Establishing Minimum Contacts.**

Romay argues that Mediaset voluntarily signed the SPA, acquiescing to Grupo Colte's choice of law and venue provisions. *See* Response, 31; Cross Appellant's Brief, 60-61. But Romay is not a party to the SPA and cannot enforce its venue provisions, and forum selection clauses do not constitute general waivers as to personal jurisdiction. *See, e.g.*, *Johnson v. Royal Caribbean Cruises,* 474 F. Supp. 3d 1260, 1266-69 (S.D. Fla. 2020) ("the conferral-of-jurisdiction clause did not constitute a blanket personal jurisdictional waiver"); *see also Carmouche v. Tamborlee Mgmt.*, 789 F.3d 1201, 1205 (11th Cir. 2015) (forum selection clauses by which the defendant had consented to jurisdiction for all actions arising out of its agreements with a third party were not sufficient contacts to subject it to general jurisdiction).

Romay next emphasizes the Bankruptcy Court's conclusion that Mediaset expected that any litigation arising out of the SPA would take place in the United States. *See* Response, 31. This argument cites to the Bankruptcy Court's analysis of "notions of fair play and substantial justice," and conflates this analysis with minimum contacts. *See* Response, 31; ECF 342, 17-19. The analysis of "notions of fair play and substantial justice" is only reached if minimum contacts are established. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("Once it has been decided that a defendant purposefully established minimum contacts within the

9

forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"). The mere foreseeability of litigation in the forum does not establish minimum contacts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.").

Romay also points to Mediaset's ownership of the Pegaso stock "for 18 [sic][5] years." *See* Response, 33. But as Romay concedes, "mere stock ownership or representation on a board of directors is insufficient to establish 'minimum contacts.'" *See* Response, 29.[6] Romay does not argue or cite any authority for the proposition that this "unremarkable statement of law" changes based on the duration of stock ownership. *See* Response, 29, 33.

Moreover, regardless of the length of Mediaset's relationship with Pegaso,

---

[5] Mediaset purchased the stock in 2008 and sold it in 2018. ECF 353 ¶¶ 5, 20.

[6] While Romay notes that Cross Appellant's Brief did not cite *Shaffer v. Heitner*, 433 U.S. 186 (1977), it cites for the same proposition *Cent. States, Se. and Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th. Cir. 2000) ("We join other courts in finding that stock ownership in or affiliation with a corporation, without more, is not a sufficient minimum contact") (collecting cases), and *Searcy v. Knight (In re Am. Int'l Refinery)*, 2009 Bankr. LEXIS 5586 *34-35, 2009 WL 8602809 (Bankr. W.D. La. Dec. 22, 2009).

minimum contacts must be with the forum itself, not with persons residing in the forum. *Walden v. Fiore,* 571 U.S. 277, 285-86 (2014) ("it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him.... a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). Accordingly, even an 18-year relationship with a citizen of the forum does not constitute purposeful availment.

Romay further asserts that Mediaset was "involved" in litigation "involving the Romay Parties." *See* Response, 33.[7] As a Caribevision stakeholder, Mediaset was consulted about major decisions, such as responding to the claims in the Romay State Court Litigation. ECF 353-1 ¶17. Consultation about such extraordinary events, however, does not constitute "active involvement" in the business or purposeful availment of the privilege of conducting business in the forum. *See Burger King,* 471 U.S. at 475-76, 472 (specific jurisdiction may be asserted where the defendant "purposefully avails" itself of the privilege of conducting business in the forum by engaging in "significant" activities within the forum or creating "continuing obligations" with residents of the forum, "thus invoking the benefits and

---

[7] It is not clear to which litigation Romay refers. Mediaset was not a party to the Romay State Court Litigation (filed in 2017), as defined in the order on personal jurisdiction. *See* ECF 342, 7. It was a party to the First Romay Litigation (filed in 2011). *See id.* at 5.

protections of its laws," and the litigation "results from alleged injuries that 'arise out of or relate to' those activities.").

In any event, other litigation in the forum does not establish minimum contacts. *See Merlino v. Harrah's Entm't, Inc.*, 2006 U.S. Dist. LEXIS 6411 *8 (E.D. Pa. February 17, 2006) ("Plaintiffs' argument seems to improperly conflate purposeful availment - a specific jurisdiction concept - with general jurisdiction to argue that once a defendant makes use of the Commonwealth's court system it has opened itself to being sued in the Commonwealth on any claim. Filing even nineteen lawsuits, without more, cannot constitute continuous and systematic activity so as to establish general jurisdiction.").

Finally, while Romay dismisses as "wholly irrelevant" the fact that Mediaset did not "reach into the forum" to purchase or sell its Pegaso stock, this fact militates against purposeful availment. *See* Response, 33; *compare Burger King*, at 479-80, 487 (defendant who "'[reached] out beyond' Michigan" and entered into a "20-year relationship that envisioned continuing and wide-reaching contacts with Burger King in Florida," including submitting to the "long-term and exacting regulation of his business from Burger King's Miami headquarters," established minimum contacts with Florida) *with AstroPower,* 2006 Bankr. LEXIS 2443 at *17 (distinguishing *Burger King* where defendants had not reached out to the U.S. for the stock purchase and there was no evidence that defendants purposefully

12

established minimum contacts with the U.S. through the stock purchase agreement). Like the *AstroPower* defendants, Mediaset did not reach into the forum to purchase or to divest its Pegaso stock and, unlike the *Burger King* defendant, Mediaset did not subject itself to any regulation of its business from the U.S. whatsoever. *See* Cross Appellant's Brief, 60-61; ECF 34-1.

### D. Romay Fails to Address the Issues with the Order on the Motion for Reconsideration.

Romay contends that Mediaset's appeal of the order denying its motion for reconsideration simply "rehashes" its arguments as to its involvement in the Broadcast Businesses, which the Bankruptcy Court "explicitly" addressed in adjudicating the motion. Response, 36. Actually, the issues Mediaset identified are that the order on the motion for reconsideration (i) relies upon the same insufficiently probative testimony and improper inferences that underlie the summary judgment order and (ii) suggests the Bankruptcy Court weighed the evidence and made factual determinations on summary judgment. *See* Cross Appellant's Brief, 65; ECF 405, 6 ("[w]hile Santamaria claims that he was not involved in the business, the deposition testimony [lacking date references and entity names], Santamaria's own testimony regarding the [refinance requiring stakeholder guarantees], as well as the extensive involvement of Santamaria, as reflected in [four] emails submitted in support of the SJ Motions, all illustrate that Santamaria was involved in significant decisions relating to the Broadcast Businesses."). While Romay takes issue with Mediaset's

articulation of the applicable standard, he does not address, much less refute, the problems Mediaset identified with the order. *See* Response, 33-34.

## CONCLUSION

The record in this case shows that, other than miniscule unrelated sales,[8] Mediaset's only U.S. contacts between being frozen out of the Broadcast Businesses by Romay in 2010 and the Transfer in 2018 were its Pegaso stock and minority position on Caribevision's board. Mediaset's input on the refinance requiring stakeholder guarantees, the FCC Auction and the Romay litigation derived directly from and related only to these limited contacts, and does not support a finding that Mediaset was involved in the day-to-day operations or management of the Broadcast Businesses. Where first Romay and then Vasallo were the persons in control of the management and operations, and Mediaset acted only in connection with its Pegaso stock ownership and minority board representation, Mediaset did not purposefully avail itself of the privilege of conducting business in the U.S. Because Mediaset's Pegaso stock ownership and minority board representation created only an attenuated affiliation with the U.S. rather than a substantial connection with the U.S.,

---

[8] Mediaset's only sales to U.S.-based companies are limited to sales of certain intellectual property rights to a small number of U.S.-based companies, amounting to less than 1% of Mediaset's business. These sales are unrelated to this case and do not serve as a basis for specific or general jurisdiction. *See* ECF 175; 34-1.

they do not establish minimum contacts. *See Burger King*, 471 U.S. at 475-76, n. 18.

In addition, other than the noted unrelated sales, Mediaset had no U.S. contacts at or around the time this case was filed. *See* ECF 34-1; *Johnson v. Woodcock*, 444 F.3d 953, 955-56 (8th Cir. 2006) (minimum contacts for specific jurisdiction must exist at the time the cause of action arose, when suit was filed, or within a reasonable period immediately prior to the filing of the lawsuit).

Mediaset thus lacks the minimum contacts required for specific jurisdiction. Accordingly, the Court should reverse the holdings regarding personal jurisdiction.

Dated: March 26, 2025                           Respectfully submitted,

                                                **STEARNS WEAVER MILLER**
                                                **WEISSLER ALHADEFF &**
                                                **SITTERSON, P.A.**
                                                Patricia A. Redmond
                                                Florida Bar Number 303739
                                                Darrell Payne
                                                Florida Bar Number 773300
                                                150 West Flagler Street, Suite 2200
                                                Miami, Florida 33130
                                                predmond@stearnsweaver.com
                                                dpayne@stearnsweaver.com

                                                Co-Counsel for Appellee / Cross
                                                Appellant Mediaset


                                                -and-

**PIERSON FERDINAND LLP**

By:___*s/Leanne McKnight Prendergast*
        Leanne McKnight Prendergast

Florida Bar No. 59544
12620 Beach Blvd. Suite 3 #126
Jacksonville, Florida 32246
1.904.479.6612
leanne.prendergast@pierferd.com

Co-Counsel for Appellee / Cross
Appellant Mediaset

16

## TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Fed. R. Bankr. P. 8016 (d)(2)(B)(i) because, excluding parts of the document exempted by Fed. R. Bankr. P. 8015(g), this document contains 3,902 words.

2. This document complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type-style requirements Fed. R. Bankr. P. 8015(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

_s/Leanne McKnight Prendergast_
Leanne McKnight Prendergast, Esq.

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on March 26, 2025, I uploaded and electronically filed this brief through the CM/ECF System, which will send a notice of electronic filing to all counsel of record, including counsel for Appellant, listed below. All participants in this case are registered CM/ECF users.

Paul A. Avron
pavron@bergersingerman.com

Monique D Hayes
monique@dgimlaw.com

Paul Singerman
singerman@bergersingerman.com

Darrell Winston Payne
dpayne@stearnsweaver.com; cveguilla@stearnsweaver.com

Patricia A Redmond
predmond@stearnsweaver.com; JMartinez@stearnsweaver.com;
MFernandez@stearnsweaver.com

Leanne McKnight Prendergast
leanne.prendergast@pierferd.com

*s/Leanne McKnight Prendergast*
Attorney